# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CHELSEA MANNING,<br><br>             Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE and the<br>FEDERAL BUREAU OF INVESTIGATION,<br><br>             Defendants. | Case No. 1:15-cv-01654-APM |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, by and through their undersigned counsel, hereby move for summary

judgment pursuant to Federal Rule of Civil Procedure 56. Accompanying this motion is a

memorandum of points and authorities in support of this motion. Defendants respectfully

request that the Court grant this motion for the reasons described in the memorandum and in the

attached declaration.


Dated: March 15, 2016

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

CHANNING D. PHILLIPS
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch

*/s/ Aimee W. Brown*
AIMEE W. BROWN (IL Bar No. 6316922)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch

20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-0845
Fax: (202) 616-8470
Email: aimee.w.brown@usdoj.gov

*Counsel for Defendant*s

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHELSEA MANNING,

        Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE and the
FEDERAL BUREAU OF INVESTIGATION,

        Defendants.

Case No. 1:15-cv-01654-APM

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

STANDARD OF REVIEW ............................................................................................. 4

ARGUMENT ................................................................................................................... 6

    I.       THE FBI CONDUCTED ADEQUATE SEARCHES FOR RESPONSIVE
           RECORDS ........................................................................................... 6

    II.      THE FBI PROPERLY WITHHELD ALL RESPONSIVE DOCUMENTS
           UNDER EXEMPTION 7(A) ................................................................. 8

         A.     The Records Were "Compliled for Law Enforcement Purposes" .............. 8

         B.     Disclosure of the Records "Could Reasonably Be Expected to
              Interfere with Enforcement Proceedings"................................................. 10

CONCLUSION................................................................................................................. 16

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Alyeska Pipeline Serv. Co. v. EPA,*
    856 F.2d 309 (D.C. Cir. 1988) .......................................................................... 13

*Aspin v. Dep't of Def.,*
    491 F.2d 24 (D.C. Cir. 1973) ............................................................................. 8

*Azmy v. Dep't of Def.,*
    562 F. Supp. 2d 590 (S.D.N.Y. 2008) ............................................................... 15

*Baldrige v. Shapiro,*
    455 U.S. 345 (1982) ........................................................................................... 4

*Bevis v. Dep't of State,*
    801 F.2d 1386 (D.C. Cir. 1986) ................................................................... 10, 12

*Campbell v. Dep't of Health & Human Servs.,*
    682 F.2d 256 (D.C. Cir. 1982) .......................................................................... 10

*Campbell v. U.S. Dep't of Justice,*
    164 F.3d 20 (D.C. Cir. 1998) ............................................................................. 9

*Crooker v. Bureau of Alcohol, Tobacco & Firearms,*
    789 F.2d 64 (D.C. Cir. 1986) ........................................................................... 10

*Crowell & Moring v. Dep't of Def.,*
    703 F. Supp. 1004 (D.D.C. 1989) ..................................................................... 13

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,*
    331 F.3d 918 (D.C. Cir. 2003) .................................................................. *passim*

*Dickerson v. Dep't of Justice,*
    992 F.2d 1426 (6th Cir. 1993) .......................................................................... 11

*Edmonds v. FBI,*
    272 F. Supp. 2d 35 (D.D.C. 2003) ........................................................ 12, 13, 14

*Elec. Privacy Info. Ctr. v. Dep't of Justice Criminal Div.,*
    82 F. Supp. 3d 307 (D.D.C. 2015) .......................................................... 7, 9, 11, 16

*Envtl. Prot. Servs. v. EPA,*
    364 F. Supp. 2d 575 (N.D.W. Va. 2005) .......................................................... 14

*Gardels v. CIA*,
   689 F.2d 1100 (D.C. Cir. 1982) ................................................................ 5

*Greenberg v. U.S. Dep't of Treasury*,
   10 F. Supp. 2d 3 (D.D.C. 1998) ................................................................ 6

*Hale v. U.S. Dep't of Justice*,
   973 F.2d 894 (10th Cir. 1992) ................................................................ 5

*J.P. Stevens & Co. v. Perry*,
   710 F.2d 136 (4th Cir. 1983) ................................................................ 14

*Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*,
   284 F.3d 172 (D.C. Cir. 2002) ................................................................ 8

*Juarez v. Dep't of Justice*,
   518 F.3d 54 (D.C. Cir. 2008) ................................................................ 11, 14

*Kay v. FCC*,
   976 F. Supp. 23 (D.D.C. 1997) ................................................................ 13, 15

*Kidd v. Dep't of Justice*,
   362 F. Supp. 2d 291 (D.D.C. 2005) ................................................................ 8

*Marshall v. FBI*,
   802 F. Supp. 2d 125 (D.D.C. 2011) ................................................................ 7

*McGehee v. U.S. Dep't of Justice*,
   800 F. Supp. 2d 220 (D.D.C. 2011) ................................................................ 7

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986) ................................................................ 4

*Moorefield v. U.S. Secret Serv.*,
   611 F.2d 1021 (5th Cir. 1980) ................................................................ 14

*Oglesby v. U.S. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ................................................................ 4, 6

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ................................................................ 6

*Schrecker v. U.S. Dep't of Justice*,
   349 F.3d 657 (D.C. Cir. 2003) ................................................................ 6

*Solar Sources, Inc. v. United States*,
  142 F.3d 1033 (7th Cir. 1998) ............................................................................... 13

*Suzhou Yuanda Enter. Co. v. U.S. Customs & Border Prot.,*
  404 F. Supp. 2d 9 (D.D.C. 2005) ........................................................................... 14

*Texas Indep. Producers Legal Action Ass'n v. IRS*,
  605 F. Supp. 538 (D.D.C. 1984) ............................................................................. 6

*U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*,
  489 U.S. 749 (1989) ................................................................................................ 5

*Weisberg v. U.S. Dep't of Justice,*
  705 F.2d 1344 (D.C. Cir. 1983) .............................................................................. 6

## <u>Statutes</u>

5 U.S.C. § 552 ......................................................................................................... 4

5 U.S.C. § 552a ....................................................................................................... 2

5 U.S.C. § 552(a)(3) ............................................................................................... 4

5 U.S.C. § 552(a)(4)(B) .......................................................................................... 5

5 U.S.C. § 552(b)(7)(A) ................................................................................... 1, 4, 8

## <u>Rules</u>

Federal Rule of Civil Procedure 56 .................................................................... 1, 2

## INTRODUCTION

On November 28, 2010, the organization WikiLeaks published numerous documents that it contended were Department of State embassy cables. The following day, then-Attorney General Eric H. Holder, Jr. stated that the Department of Justice had initiated a criminal investigation into the potential unauthorized release of classified information. *See* Ellen Nakashima and Jerry Markon, *WikiLeaks Founder Could Be Charged Under Espionage Act*, WASHINGTON POST (Nov. 30, 2010, 12:13 AM), http://www.washingtonpost.com/wp-dyn/content/article/2010/11/29/AR2010112905973.html. Despite Manning's conviction, that investigation continues to this day.

This case arises out of Plaintiff Chelsea Manning's attempts to obtain information from the government's files about that investigation. In February 2014, Manning submitted a FOIA request to the Federal Bureau of Investigation ("FBI") seeking records relating to the FBI's investigation of Manning and alleged civilian co-conspirators' involvement in disclosure of "classified and sensitive but unclassified" information. *See* Ex. A (request to FBI).

Manning's request is a quintessential example of an improper attempt to use FOIA to force the government to open its investigative files to public inspection. But Congress did not enact FOIA to permit such unwarranted intrusion. Through Exemption 7(A), FOIA protects from disclosure "records or information compiled for law enforcement purposes" when the disclosure of such records "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). In response to Manning's request, the FBI determined that all responsive documents are protected from disclosure by Exemption 7(A). Defendants, accordingly, move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

1

## BACKGROUND

On or about February 20, 2014, Manning submitted a FOIA request[1] to the FBI seeking

the following:

> a. Documents, papers, reports, letters, memoranda, films, electronic data, photographs, audio and video recordings of or relating to investigation conducted by the Washington Field Office of the Federal Bureau of Investigation and the U.S. Attorney's Office of the Eastern District of Virginia into the alleged disclosures of classified and sensitive but unclassified information by Private First Class (PFC) Bradley E. Manning beginning in late 2010 and continuing until an unknown date, but as late as mid-2012.
>
> b. Any other documents, papers, reports, letters, memoranda, films, electronic data, photographs, audio and video recordings of or relating to the investigation conducted by the Federal Bureau of Investigation and the U.S. Attorney's Office of the Eastern District of Virginia into alleged civilian co-conspirators of the disclosures of information by Manning.

*See* Declaration of David M. Hardy ("Hardy Decl."), Ex. 1; *see also* Ex. A.  On March 7, 2014,

the FBI sent Manning a letter acknowledging receipt of the request and informing her that the

request "did not contain sufficient information to conduct an adequate search of the Central

Records System" and requesting additional information.  *See* Ex. B.  On March 18, 2014,

Manning supplemented her request with the additional personal information requested and made

slight modifications to her request.  *See* Ex. C.  Specifically, Manning requested:

> a. Documents, papers, reports, letters, memoranda, films, electronic data, photographs, audio and video recordings of or relating to the investigation conducted by the Washington Field Office (WFO), the Department of Justice Counterepionage [sic] Section (CES), the U.S. Attorney's Office for the Eastern District of Virginia (E.D.Va.) into the alleged disclosures of classified and sensitive by [sic] unclassified information by then-Private First Class (PFC) Bradley Edward Manning (a.k.a. Chelsea Elizabeth Manning)."

---

[1] Manning also requested the same information under the Privacy Act, 5 U.S.C. § 552a. *See* Hardy Decl. (Ex. 1), Exs. A, C.  The Office of Information Policy informed Manning that the records responsive to her request were exempt from the access provision of the Privacy Act.  Ex. K.  Manning's Complaint in this suit seeks relief only under FOIA.  *See* Compl. at 7. Nevertheless, in its declaration, the FBI has also provided adequate justification for non-disclosure under the Privacy Act.  *See* Hardy Decl. ¶¶ 35–36.

b. Any other documents, papers, reports, letters, memoranda, films, electronic data, photographs, audio and video recordings of or relating to the investigation conducted by the Federal Bureau of Investigation and other agencies into suspected or alleged civilian co-conspirators of the disclosures alleged to have been conducted by Manning.

*Id.* On April 8, 2014, the FBI denied the request. *See* Ex. F. The FBI explained that the materials Manning requested were exempt from disclosure under FOIA Exemption 7(A) because they "are law enforcement records; there is a pending or prospective law enforcement proceeding relevant to these records, and release of the information in these responsive records could reasonably be expected to interfere with enforcement proceedings." *Id.* Manning appealed the FBI's determination to the Department of Justice's Office of Information Policy ("OIP"). *See* Ex. H. On August 7, 2014, OIP affirmed the denial of Manning's request. *See* Ex. K. OIP explained that the FBI "properly withheld" the requested materials because they consisted of "information compiled for law enforcement purposes the release of which could reasonably be expected to interfere with enforcement proceedings." *Id.* Manning then requested that the Office of Government Information Services ("OGIS") at the National Archives and Records Administration provide mediation regarding the FOIA request. *See* Ex. L. OGIS further explained the denial of Manning's FOIA request, informing Manning that "Exemption 7(A) remains applicable throughout long-term law enforcement investigations" and "is still applicable to the records sought at the time of [an] appeal." Ex. N.

Manning filed her Complaint on October 8, 2015, *see* ECF No. 1, and Defendants answered the Complaint on November 25, 2015, *see* ECF No. 9. Pursuant to the Court's Minute Order of December 15, 2015, Defendants now move for summary judgment based on the

applicability of 5 U.S.C. § 552(b)(7)(A).[2]  As set forth in the attached declaration, the FBI

conducted a reasonable search for the records and determined that all responsive records are

protected from disclosure under Exemption 7(A).

## STANDARD OF REVIEW

The Freedom of Information Act, 5 U.S.C. § 552, "represents a balance struck by

Congress between the public's right to know and the government's legitimate interest in keeping

certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d

918, 925 (D.C. Cir. 2003).  FOIA requires agencies to release documents responsive to a

properly submitted request, except for those documents (or portions of documents) subject to any

of nine statutory exemptions to the general disclosure obligation.  *See* 5 U.S.C. §§ 552(a)(3),

(b)(1)–(b)(9).

In discharging its obligations under FOIA, an agency generally must conduct a

reasonable search for responsive documents.  "In order to obtain summary judgment[,] the

agency must show that it made a good faith effort to conduct a search for the requested records,

using methods which can be reasonably expected to produce the information requested."

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The agency's search is

evaluated on the basis of affidavits, and "affidavits that explain in reasonable detail the scope and

method of the search conducted by the agency will suffice to demonstrate compliance with the

obligations imposed by the FOIA."  *Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986).

Although FOIA requires agency disclosure under certain circumstances, the statute

recognizes "that public disclosure is not always in the public interest."  *Baldrige v. Shapiro*, 455

---

[2] Should the Court deny Defendants' Motion For Summary Judgment based on
Exemption 7(A), Defendants have preserved their right to invoke and justify additional FOIA
exemptions.  *See* Joint Status Report, ECF No. 11.

U.S. 345, 352 (1982).  FOIA provides nine exemptions that "reflect Congress' recognition that the Executive Branch must have the ability to keep certain types of information confidential." *Hale v. U.S. Dep't of Justice*, 973 F.2d 894, 898 (10th Cir. 1992), *vacated on other grounds*, 509 U.S. 918 (1993).  To sustain its burden of justifying nondisclosure of information, *see* 5 U.S.C. § 552(a)(4)(B), an agency may submit a declaration or index describing the withheld material with reasonable specificity, explaining the reasons for nondisclosure, and demonstrating with reasonable specificity that reasonably segregable material has been released.  *See U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 753 (1989).  A court reviews an agency's response to a FOIA request *de novo*, *see* 5 U.S.C. § 552(a)(4)(B), but given the unique nature of FOIA cases, an agency declaration is accorded substantial weight.  *See Gardels v. CIA*, 689 F.2d 1100, 1104 (D.C. Cir. 1982).

In evaluating the applicability of Exemption 7(A) in this case, it is important to note that the information sought by Manning "implicat[es] national security, a uniquely executive purview."  *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926.  Manning seeks records concerning a government investigation into the unauthorized disclosure of classified information.  As former Secretary of State Hillary Clinton recognized, the disclosure of such information "puts people's lives in danger, threatens our national security, and undermines our efforts to work with other countries to solve shared problems."  *See* Sec'y Hillary Clinton, *Remarks to the Press on Release of Purportedly Confidential Documents by Wikileaks* (Nov. 29, 2010), http://www.state.gov/secretary/20092013clinton/rm/2010/11/152078.htm.  Time and again, courts have recognized the "propriety of deference to the executive in the context of FOIA claims which implicate national security."  *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927–28.

## ARGUMENT

**I.    THE FBI CONDUCTED ADEQUATE SEARCHES FOR RESPONSIVE RECORDS**

An agency can show that it discharged its obligations under FOIA and is entitled to summary judgment by submitting declarations that demonstrate that the agency "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.  "The adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  Conducting a "reasonable" search is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise" and is "hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003).

Moreover, an agency's declaration will be relied upon if it is "relatively detailed, nonconclusory, and submitted in good faith." *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 12–13 (D.D.C. 1998).  "The standard . . . is not meticulous documentation [of] the details of an epic search." *Texas Indep. Producers Legal Action Ass'n v. IRS*, 605 F. Supp. 538, 547 (D.D.C. 1984), *rev'd in part*, 802 F.2d 1483 (D.C. Cir. 1986).  A sufficiently detailed declaration is presumed to be in good faith, a presumption that can be rebutted only with clear evidence of bad faith. *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The FBI's declaration adequately explains the search the agency conducted.  The declaration explains the scope of the conducted search, the search terms used in that search, and the basis for the FBI's belief that the search would reasonably be expected to locate any documents responsive to Manning's request.  Specifically, the FBI indicates that it conducted a

search of its Central Records System ("CRS") using a six-way phonetic breakdown of

Manning's names, including "Manning, Bradley, Edward," "Manning, Bradley, E," "Manning,

B, E," "Manning, Bradley," "Manning, B," "Manning, Edward," "Manning, E," "Manning,

Chelsea, Elizabeth," "Manning, Chelsea, E," "Manning, C, E," "Manning Chelsea," "Manning

C," and "Manning Elizabeth." Hardy Decl. ¶ 30. The FBI also used Manning's date of birth,

place of birth, the case number Manning provided and her description of the relevant

investigation (including dates). *Id.* The FBI used the terms to search both the main entries

(those records indexed to the main subjects of a file) and cross-references (entries pertaining to a

different subject matter in which the relevant individual is merely mentioned or referenced) in its

system. *Id.* ¶¶ 30–31. Upon review of the results of these searches, the FBI determined that the

search captured records responsive to both parts of Manning's request—records about herself

and records about alleged civilian co-conspirators. *Id.* ¶ 32. Based on the FBI's previous

knowledge of these records from a prior FOIA request involving records related to the FBI's

investigation of the unauthorized disclosure of classified information that was published on the

WikiLeaks website, *see Elec. Privacy Info. Ctr. v. Dep't of Justice Criminal Div.*, 82 F. Supp. 3d

307 (D.D.C. 2015) ("*EPIC*"), and FBI's further review of the responsive records here, the FBI

concluded that a separate search for records responsive to the second part of Manning's request

was unnecessary. Hardy Decl. ¶ 32. The FBI also determined that the responsive records are part

of and related to pending enforcement proceedings. *Id.* ¶¶ 30–31.

Courts have routinely found that FBI searches of its CRS fully meet the standards of

adequacy and reasonableness established under FOIA. *See, e.g.*, *EPIC*, 82 F. Supp. 3d at 317;

*Marshall v. FBI*, 802 F. Supp. 2d 125, 132–33 (D.D.C. 2011); *McGehee v. U.S. Dep't of Justice*,

800 F. Supp. 2d 220, 229–30 (D.D.C. 2011). Here, a search of the CRS using the above-

mentioned terms was likely to locate any responsive documents.  Hardy Decl. ¶ 33.  CRS is

where the FBI indexes information about individuals, organizations, events, and other subjects of

investigative interest for future retrieval.  Because Manning sought investigative records

pertaining to herself, such information would reasonably be expected to be located in the CRS

via the index search methodology.  *Id.*  Accordingly, the FBI's search was both comprehensive

and sufficient.  The FBI "made a good faith effort to search for the records requested," and its

"methods were reasonably expected to produce the information requested."  *Kidd v. Dep't of*

*Justice*, 362 F. Supp. 2d 291, 294 (D.D.C. 2005).  Thus, the Court should enter summary

judgment on this issue in favor of Defendants.

## II.     THE FBI PROPERLY WITHHELD ALL RESPONSIVE DOCUMENTS UNDER EXEMPTION 7(A)

The FBI determined that all records responsive to Manning's request are subject to and

are being withheld pursuant to Exemption 7(A), which applies to "records or information

compiled for law enforcement purposes" to the extent that the production of such records "could

reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

As detailed below, the FBI has met its burden under FOIA and established that it properly

withheld all responsive records under this exemption.

### A.     The Records Were "Compiled for Law Enforcement Purposes"

"In assessing whether records are compiled for law enforcement purposes, . . . the focus

is on how and under what circumstances the requested files were compiled, and 'whether the

files sought relate to anything that can fairly be characterized as an enforcement proceeding.'"

*Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 176–77 (D.C. Cir.

2002) (quoting *Aspin v. Dep't of Def.*, 491 F.2d 24, 27 (D.C. Cir. 1973)).  "Because the DOJ is

an agency 'specializ[ing] in law enforcement, its claim of a law enforcement purpose is entitled

to deference." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926.  To demonstrate that the records were compiled for law enforcement purposes, an agency "must establish (1) 'a rational nexus between the investigation and one of the agency's law enforcement duties;' and (2) 'a connection between an individual or incident and a possible security risk or violation of federal law.'" *Id.* (quoting *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999)).

Here, the FBI's declaration makes clear that the information withheld under this exemption was "compiled for law enforcement purposes" because it is part of a broader, ongoing investigation being conducted by the Department of Justice into the unauthorized disclosure of classified information published on the WikiLeaks website.  Hardy Decl. ¶¶ 39–41.  The investigation of criminal conduct, particularly when it entails serious threats to national security, is plainly a high-priority law enforcement duty of the Department.  *See Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926 (recognizing that the Exemption 7(A) threshold is satisfied by an investigation concerning "a heinous violation of federal law as well as a breach of this nation's security").  Insofar as individuals are being investigated for their role in the unauthorized disclosure of classified information, there is a clear nexus between the subjects "and a possible security risk or violation of federal law." *Id.*  Indeed, in a prior case in this circuit, the Electronic Privacy Information Center ("EPIC") made a similar FOIA request for documents relating to the WikiLeaks investigation, and the court concluded that the responsive records "were quite obviously related to the FBI['s] . . . law enforcement duties to enforce criminal laws and to protect against national security threats." *EPIC*, 82 F. Supp. 3d at 319.  Because the records at issue were compiled as part of an FBI investigation into possible violations of federal law, they were "compiled for law enforcement purposes," and the threshold inquiry under Exemption 7(A) is satisfied.

**B.     Disclosure of the Records "Could Reasonably Be Expected to Interfere with Enforcement Proceedings"**

The FBI has also determined that the disclosure of the responsive records could reasonably be expected to interfere with ongoing enforcement proceedings.  "Exemption 7(A) explicitly requires a predictive judgment of the harm that will result from disclosure of information." *Ctr. for Nat'l Sec. Studies,* 331 F.3d at 927.  Given that the Department's investigation concerns matters of national security, the declaration must be "viewed in light of the appropriate deference to the executive on issues of national security." *Id.  See also id.* at 927–28 ("Just as we have deferred to the executive when it invokes FOIA Exemptions 1 and 3, we owe the same deference under Exemption 7(A) in appropriate cases," including those in which "the government's declarations raise legitimate concerns that disclosure would impair national security.").

In justifying its reliance on Exemption 7(A), the government need not discuss the exemption on a document-by-document basis.  To do so could itself impede the investigation, as providing details such as the volume of the responsive material or the nature of particular documents could itself reveal sensitive information that could impede the investigation.  Instead, an agency may "group[] documents into relevant categories that are sufficiently distinct to allow a court to grasp 'how each . . . category of documents, if disclosed, would interfere with the investigation.'" *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (quoting *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982)).  As set forth below, the FBI has reviewed the responsive documents, and identified "functional" categories, such that the court may "trace a rational link between the nature of the document and the alleged likely interference." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986).  The declaration adequately explains the categories of responsive records, the

10

enforcement proceedings to which the responsive records relate, and the likely interference

release of the records would entail.

The declaration explains that the requested documents relate to an ongoing national

security investigation.  In 2010, the FBI's Washington Field Office opened a criminal/national

security investigation into the possible disclosure of classified information that was published on

the WikiLeaks website.  Hardy Decl. ¶ 39.  That investigation concerns potential violations of

federal criminal laws, in the form of serious threats to the national security, and the investigation

continues today.  *Id.*  From the terms of her request, it is clear that Manning seeks to obtain

documents concerning that investigation.  Although the investigation began several years ago,

the documents relating to it remain under the protection of Exemption 7(A).  *See EPIC*, 82 F.

Supp. 3d at 319–22 (holding that the WikiLeaks investigation documents remained subject to

Exemption 7(A) in light of the ongoing investigation).  It is well-established that although

Exemption 7(A) is temporal in nature, it nevertheless remains viable throughout the duration of

long-term investigations.  *See, e.g.*, *Juarez v. Dep't of Justice*, 518 F.3d 54, 57 (D.C. Cir. 2008)

(recognizing that an investigation that was pending in 2002 remained ongoing in 2008, even

though the investigating agency had interviewed the subject of the investigation several years

prior to 2008, and had—according to the subject—"showed no further interest in [her]

participation in their investigation"); *Dickerson v. Dep't of Justice*, 992 F.2d 1426, 1431 (6th Cir.

1993) (affirming the district court's conclusion in 1991 and 1992 that FBI's investigation into the

1975 disappearance of Jimmy Hoffa remained open and pending).

In describing the categories of records at issue, the declaration explains that the records

responsive to Manning's request consist of evidentiary, investigative, and administrative

materials related to the investigation.  Hardy Decl. ¶ 45.  The records are further described by

type—such as confidential source statements, communications between the FBI and other law enforcement agencies, and documentary evidence gathered in the course of the investigation—in ways that indicate the information contained in the materials. *Id.* ¶¶ 46–47.  By describing the responsive documents in the functional categories, the agency has provided sufficient detail to meet their burden under Exemption 7(A).  *See*, *e.g.*, *Edmonds v. FBI*, 272 F. Supp. 2d 35, 54–55 (D.D.C. 2003) (upholding agency's declaration that grouped withheld material into two categories, "evidentiary" and "investigative" materials).  *Cf. Bevis*, 801 F.2d at 1390 (rejecting use of categories such as "letters" that give "absolutely no indication of the substance of the information contained").

Moreover, the declaration provides substantive explanations for the harms that would result from disclosure.  For example, the FBI has withheld information that, if disclosed, would identify potential witnesses and other individuals who have cooperated with the investigation. Specifically, the FBI has explained that the documents include statements made to the FBI by sources who were given expressed or implied assurances that their identities would remain confidential.  Hardy Decl. ¶ 46(a).  These statements contain information provided by individuals with knowledge of potential criminal activities.  *Id.*  As the FBI explains, disclosure of the information would mean that "the sources that have chosen to cooperate with law enforcement could be subjected to retaliation, intimidation, or physical or mental harm."  *Id.*  Aside from the harms that disclosure would cause to the sources themselves, it is the judgment of the FBI that this would have a chilling effect on these investigations and any future prosecutions resulting from these cases.  *Id.*

The harms associated with revealing the identities of cooperating individuals are well-recognized in cases applying Exemption 7(A).  *See*, *e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at

12

929 (discussing courts that have found the "likelihood of witness intimidation and evidence tampering" to be sufficient concerns under Exemption 7(A)); *Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 311 (D.C. Cir. 1988) (agreeing that disclosure might identify individuals who had assisted investigation by providing documents, and would "thereby subject them to potential reprisals and deter them from providing further information"); *Edmonds*, 272 F. Supp. 2d at 55 (recognizing potential harms that would result if disclosure "stifle[d] cooperation" or "le[d] to the harassment or intimidation of individuals involved in the investigations"); *Kay v. FCC*, 976 F. Supp. 23, 39 (D.D.C. 1997), *aff'd*, 172 F.3d 919 (D.C. Cir. 1998) (recognizing that an agency "need not establish that witness intimidation is certain to occur, only that it is a possibility"); *Crowell & Moring v. Dep't of Def.*, 703 F. Supp. 1004, 1011 (D.D.C. 1989) (agreeing that disclosing witnesses' identifies would impair the government's ability to obtain cooperation during an investigation).

The FBI has also asserted Exemption 7(A) to protect exchanges of information between the FBI and other law enforcement agencies.  Hardy Decl. ¶ 46(b).  Release of this information "would reveal the scope and focus of the investigation; identify and tip off individuals of interest to law enforcement; and provide suspects or targets the opportunity to destroy evidence and alter their behavior to avoid detection." *Id.*

Courts time and again have recognized the harms that would result from disclosing the scope of an investigation, and refused to allow FOIA to be used as a tool to force the government to prematurely provide a roadmap of its investigative plans.  *See, e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 928 (disclosure "would enable al Qaeda or other terrorist groups to map the course of the investigation," thus giving them "a composite picture"); *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998) (agreeing that disclosure could reveal "scope and nature" of

investigation); *J.P. Stevens & Co. v. Perry*, 710 F.2d 136, 143 (4th Cir. 1983) (disclosure would "hinder [the agency's] ability to shape and control investigations"); *Suzhou Yuanda Enter. Co. v. U.S. Customs & Border Prot.*, 404 F. Supp. 2d 9, 14 (D.D.C. 2005) (accepting that disclosure of evidence of criminal conduct "would interfere with an agency investigation [by] informing the public of the evidence sought and scrutinized by this type of investigation"); *Envtl. Prot. Servs. v. EPA*, 364 F. Supp. 2d 575, 588 (N.D.W. Va. 2005) (disclosure "would prematurely reveal the EPA's case"); *Edmonds*, 272 F. Supp. 2d at 55 (recognizing potential harms that would result if disclosure "reveal[ed] the nature and scope of the investigations, investigative activities, the cooperation of particular individuals, the identity of potential witnesses, and the investigative steps taken to pursue interviews with individuals who can inform investigators").

The agency has also determined that releasing certain evidentiary materials gathered during the investigations would identify "the subjects of, and persons of investigative interest in, the investigation." Hardy Decl. ¶ 46(c). As explained in the declaration, "[o]nce subjects and persons of interest become aware of the FBI's attention, they are able to take defensive actions to conceal their activities, elude detection, mislead the investigation, and/or suppress or fabricate evidence." *Id.*

It is well-established that Exemption 7(A) provides for the non-disclosure of information that would alert individuals that they are of interest to a pending investigation. *See, e.g., Juarez*, 518 F.3d at 58 (agreeing that release "would compromise the investigation as it could lead to destruction of evidence"); *Moorefield v. U.S. Secret Serv.*, 611 F.2d 1021, 1026 (5th Cir. 1980) (agreeing that disclosure would enable targets "to elude the scrutiny of the [Secret] Service"); *Azmy v. Dep't of Def.*, 562 F. Supp. 2d 590, 605 (S.D.N.Y. 2008) (disclosure of "names of individuals and organizations of ongoing law enforcement interest" could reasonably be

expected to interfere with investigation because "subjects of the Government's interest would likely attempt to conceal their activities"); *Kay*, 976 F. Supp. at 38–39 (finding that disclosure would harm an investigation because it would provide the requester with insight into the focus of the agency's investigation and evidence, and permit him to intimidate witnesses and circumvent the investigation).

Disclosure of the administrative materials the FBI has identified as responsive to Manning's FOIA request would have similar effects on the ongoing investigations. For example, the reporting communications would reveal "the investigative steps taken to obtain witness and source interviews; techniques and investigative methods used to compile and/or solicit information from various sources; and any potential or perceived challenges in the investigation." Hardy Decl. ¶ 47(a). Disclosure of miscellaneous administrative documents would "provide information useful in identifying witnesses and sources, ascertaining investigative strategies, and determining what evidence the FBI has collected," thus undermining its investigative efforts. *Id.* ¶ 47(b). Finally, disclosure of administrative instructions would reveal "specific investigative procedures employed in the investigation," thus "permit[ting] subjects or individuals of investigative interest to the FBI to anticipate law enforcement actions and to alter, destroy, or fabricate evidence to their benefit, or to mislead the investigation." *Id.* ¶ 48. Revelation of any of these materials would interfere with the ongoing enforcement proceedings.

The FBI has reviewed the responsive material, and determined that it is exempt in its entirety under Exemption 7(A). As a result, there are no segregable, non-exempt portions that may be released to Manning. Hardy Decl. ¶ 49. Defendants' assertion of Exemption 7(A)

should thus be upheld.  *See EPIC*, 82 F. Supp. 3d at 322 (agreeing with the FBI's determination

that there is no segregable material in documents involving the WikiLeaks investigation).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their

Motion for Summary Judgment and enter final judgment for them in this matter.

Dated:  March 15, 2016                                            Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

CHANNING D. PHILLIPS
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Branch Director
Federal Programs Branch

 */s/ Aimee W. Brown*
AIMEE W. BROWN (IL Bar No. 6316922)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-0845
Fax: (202) 616-8470
Email: aimee.w.brown@usdoj.gov

*Counsel for Defendant*s

16