## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                  )

**Chelsea Manning,**                        )

        **Plaintiff,**                  )

                                   )

            **v.**                         )       **Case No. 15-cv-01654 (APM)**

                                   )

**U.S. Department of Justice, et al.,**     )

                                   )

        **Defendants.**             )
_____ )

### MEMORANDUM OPINION

## I.    INTRODUCTION

In 2010, the U.S. Army charged Plaintiff Chelsea Manning, then-Private First Class Bradley Manning, with violating U.S. federal and military law for allegedly disclosing classified and confidential information to the online organization WikiLeaks. Plaintiff pleaded guilty to some of the charges in February 2013 and was convicted of others by a military judge in a court-martial in July 2013. Plaintiff now brings this Freedom of Information Act ("FOIA") action against Defendants the U.S. Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI"), seeking records related to Defendants' investigation into Plaintiff and others related to the disclosures. This action is before the court on the parties' cross-motions for summary judgment. Defendants contend that they properly withheld all information responsive to Plaintiff's FOIA request under FOIA Exemption 7(A), which allows agencies to shield law enforcement records from public disclosure if releasing those records would interfere with an ongoing investigation. Plaintiff argues that the FBI improperly withheld records related to her alone because any investigation into her conduct that would justify such withholding must have

concluded when she was convicted and sentenced.  Further, Plaintiff contends that the agency improperly failed to release any non-exempt, segregable material.

The court finds that Defendants have adequately justified their withholding of all records under Exemption 7(A).  It therefore grants Defendants' Motion for Summary Judgment and denies Plaintiff's Cross-Motion for Summary Judgment.

## II.    BACKGROUND

In 2010, the U.S. Army charged Plaintiff Chelsea Manning, then-Private First Class Bradley Manning, with violations of U.S. military and federal law for disclosing classified and confidential information to WikiLeaks.  Pl.'s Cross-Mot. for Summ. J. and Resp. to Defs.' Mot. for Summ. J., ECF No. 14, at 3–7 [hereinafter Pl.'s Stmt.], ¶ 1; Defs.' Resp. to Pl.'s Stmt. of Material Facts, ECF No. 16-2 [hereinafter Defs.' Resp.], ¶ 1.  In 2013, Plaintiff pleaded guilty to some of the charges and went to trial on the remaining charges.  Pl.'s Stmt. ¶ 2; Defs.' Resp. ¶ 2.  Plaintiff was convicted of espionage, theft, and computer fraud, as well as certain other military offenses, and is currently serving a 35-year sentence in Fort Leavenworth, Kansas.  Pl.'s Stmt. ¶¶ 3–4; Defs.' Resp. ¶¶ 3–4.

In February 2014, Plaintiff submitted a FOIA request to the FBI seeking information related to its investigation of Plaintiff's disclosures to WikiLeaks.  Pl.'s Stmt. ¶ 6; Defs.' Resp. ¶ 6; Defs.' Mot. for Summ. J., ECF No. 12 [hereinafter Defs.' Mot.], Ex. A, ECF No. 12-2 [hereinafter FOIA Request].  In March 2014, following the FBI's response that Plaintiff's request was insufficiently detailed for it to conduct an accurate search, Plaintiff submitted a modified request seeking two categories of documents:  (1) records related to the investigation conducted by the FBI, the DOJ Counterespionage Section, and the U.S. Attorney's Office for the Eastern District of Virginia "into the alleged disclosures of classified and sensitive . . . information by then-

Private First Class (PFC) Bradley Edward Manning (a.k.a. Chelsea Elizabeth Manning)"; and (2) records related to the investigation of "suspected or alleged civilian co-conspirators of the disclosures alleged to have been conducted by Manning."  Pl.'s Stmt. ¶¶ 7–8; Defs.' Resp. ¶¶ 7–8; Defs.' Mot., Ex. B, No. 12-3, at 2; Defs.' Mot., Ex. C, ECF No. 12-4, at 3.

On April 8, 2014, in response to the first part of Plaintiff's request, the FBI conducted a search of its Central Records System using Plaintiff's name and variations of her name.  Defs.' Stmt. of Material Facts, ECF No. 12-16 [hereinafter Defs.' Stmt.], Defs.' Stmt. ¶ 7; Pl.'s Resp. to Defs.' Stmt., ECF No. 14-7 [hereinafter Pl.'s Resp.], ¶ 7; Defs.' Mot., Decl. of David M. Hardy, ECF No. 12-1 [hereinafter Hardy Decl.], ¶ 30.  The FBI did not, however, conduct a separate search pursuant to the second part of Plaintiff's request—for records related to others—because the FBI believed any documents responsive to the first part of Plaintiff's request would be responsive to the second part.  Defs.' Stmt. ¶ 9; Pl.'s Resp. ¶ 9; Hardy Decl. ¶ 32.  That same day, the FBI denied Plaintiff's FOIA request, informing Plaintiff that the records responsive to her request were exempt from disclosure under FOIA Exemption 7(A).  Defs.' Stmt. ¶ 11; Pl.'s Resp. ¶ 11; Defs.' Mot., Ex. F, ECF No. 12-7, at 2; Hardy Decl. ¶ 11.  Exemption 7(A) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

Plaintiff appealed the FBI's denial of her request to the DOJ Office of Information Policy. Pl.'s Stmt. ¶ 14; Defs.' Resp. ¶ 14; Defs.' Mot., Ex. K, ECF No. 12-12 [hereinafter Defs.' Mot., Ex. K].  The Office of Information Policy affirmed the denial and advised Plaintiff that she could file a lawsuit in federal district court and/or request mediation services offered by the Office of Government Information Services ("OGIS") at the National Archives and Records Administration.

Defs.' Stmt. ¶ 16; Pl.'s Resp. ¶ 16; Defs.' Mot., Ex. K.  Plaintiff requested mediation through the OGIS in January 2015, and OGIS replied via letter in February 2015, reaffirming the FBI's decision that Exemption 7(A) applied to her request.  Pl.'s Stmt. ¶¶ 16–17; Defs.' Resp. ¶ 16–17; Defs.' Mot., Ex. L, ECF No. 12-13; Defs.' Mot., Ex. N, ECF No. 12-15 [hereinafter Defs.' Mot., Ex. N].  OGIS suggested Plaintiff file a new FOIA request in the future "to see if 7(A)'s protections have been lifted."  Defs.' Mot., Ex. N.  Plaintiff then filed suit in this court on October 8, 2015. Pl.'s Compl., ECF No. 1.

## III.    LEGAL STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To make this determination, the court must "view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation mark omitted).  A dispute is "genuine" only if a reasonable fact-finder could find for the nonmoving party, and a fact is "material" only if it is capable of affecting the outcome of litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  A non-material factual dispute cannot prevent the court from granting summary judgment.  *Id.* at 249.

Most FOIA cases are appropriately decided on motions for summary judgment. *See Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  A court may award summary judgment in a FOIA case by relying on the agency's affidavits or declarations if they are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted), and if they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith," *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). The court affords such declarations "substantial weight" if they meet these requirements. *Judicial Watch v. U.S. Dep't of Def.*, 715 F.3d 937, 940–41 (D.C. Cir. 2013).

The agency bears the burden of demonstrating that a FOIA exemption applies, and its determinations are subject to de novo review in district court. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (citing 5 U.S.C. § 552(a)(4)(B)). To prevail on a motion for summary judgment, the agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001).

Because "[t]he focus of FOIA is information, not documents . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). FOIA therefore requires that "[a]ny reasonably segregable portion of [the] record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). An agency must provide a "detailed justification" and not just make "conclusory statements" to support its segregability determination. *Mead Data Cent.*, 566 F.2d at 261. Agencies, however, "are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which can be overcome by contrary evidence produced by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

## IV.    DISCUSSION

Under Exemption 7(A), an agency may withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).[1]  To invoke this exemption, an agency must show that the records were compiled for a law enforcement purpose and that their disclosure "(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted).  "[A]n ongoing criminal investigation typically triggers Exemption 7(A)." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014).  "[S]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies." *Juarez v. Dep't of Justice*, 518 F.3d 54, 59 (D.C. Cir. 2008).

Plaintiff advances three main arguments to contest the applicability of Exemption 7(A) and the FBI's compliance with FOIA.  First, she argues that the FBI has not demonstrated that the records relate to a prospective law enforcement proceeding.  Plaintiff asserts that she cannot be the subject of any prospective law enforcement proceeding because she already has been prosecuted and convicted for the conduct the FBI was investigating.  Pl.'s Cross-Mot. for Summ. J. and Resp. to Defs.' Mot. for Summ. J., ECF No. 14 [hereinafter Pl.'s Cross-Mot.], at 11–12, 17, 21.  As a result, she argues, any material pertaining to her alone cannot be withheld under Exemption 7(A). *Id.* at 14–15.  Second, she contends that Defendants have not sufficiently justified their categorical

---

[1] The parties agreed to brief only the applicability of Exemption 7(A) in their cross-motions for summary judgment. Jt. Status Report, ECF No. 11, at 2.  Defendants have reserved the right to invoke any other applicable exemptions if the court denies their motion for summary judgment. Defs.' Mot., at 11 n.2.

withholding of all responsive documents. *Id.* at 11–13, 15–18.  Finally, she argues that Defendants have failed to satisfy their obligation to release any reasonably segregable portions of responsive documents. *Id.* at 18–25.  The court considers each argument in turn.

### A.    Whether There is an Ongoing Investigation

To show the existence of an ongoing investigation, Defendants have offered two declarations from David M. Hardy, Section Chief of the Record/Information Dissemination Section of the FBI's Records Management Division.  *See* Hardy Decl.; Defs.' Reply in Supp. of Mot. for Summ. J. and Opp'n to Pl.'s Cross-Mot. for Summ. J., ECF No. 16, Second Decl. of David M. Hardy, ECF No. 16-1 [hereinafter 2d Hardy Decl.].  In his first declaration, Hardy states that "[t]he records responsive to plaintiff's request are part of the FBI's active, ongoing criminal investigation into the . . . disclosure of classified information [on the WikiLeaks website]."  Hardy Decl. ¶¶ 33–34.  He further asserts that "release of these records would interfere with pending and prospective enforcement proceedings."  *Id.* ¶ 41.  After Plaintiff questioned how an ongoing investigation could relate to her—given that she already had been prosecuted, convicted, and sentenced, *see* Pl.'s Cross-Mot. at 14–15—Hardy submitted a second declaration, clarifying that the ongoing investigation focuses not on Plaintiff, but rather on civilian involvement in the publication of classified information.  2d Hardy Decl. ¶ 6 ("To be clear, the FBI's investigation is focused on any civilian involvement in plaintiff's leak of classified records that were published on the Wikileaks website, although plaintiff's conduct is pertinent to the FBI's investigation.").

The court must give "substantial weight" to agency declarations absent contrary evidence or evidence of bad faith.  *See Judicial Watch*, 715 F.3d at 940–41; *see also Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984).  Plaintiff has neither offered evidence to contradict Hardy's assertion that there is an ongoing criminal investigation of persons other than Plaintiff concerning

the leak of classified information to WikiLeaks, nor submitted any evidence that would suggest Hardy's declarations were made in bad faith.  *See* Pl.'s Reply at 2 (conceding that "any prospective proceedings will be in prosecution of those civilians involved in the document leaks"); *see also id.* at 7 (acknowledging that civilians other than Plaintiff are "the likely *subjects* of the FBI's still pending investigation").  Therefore, according substantial weight to Hardy's declarations, the court is satisfied that the threshold requirement of Exemption 7(A)—the existence of pending law enforcement proceedings—is satisfied.

Although Plaintiff relies upon *Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice (CREW)* for support, *see* Pl.'s Cross-Mot. at 15–16, that case does not compel a contrary result.  In *CREW*, the plaintiff filed a FOIA request seeking information about the public corruption investigation of Tom DeLay, former Speaker of the U.S. House of Representatives, after DeLay publicly announced that the DOJ had informed him he would not be charged.  *See* 746 F.3d at 1087, 1089.  The investigation into DeLay was part of the FBI's broader public corruption investigation into former lobbyist Jack Abramoff, as two individuals convicted in the Abramoff case had worked as senior aides to DeLay.  *Id.* at 1087.  The government invoked Exemption 7(A) to categorically withhold all records on the ground that there were ongoing criminal proceedings, but the court had multiple reasons to doubt whether the investigation remained ongoing:  more than two-and-a-half years had passed since the FBI filed its initial declaration in the district court; the DOJ provided only "vague" mention in the declaration that investigations were ongoing; DOJ counsel failed to cite any ongoing proceedings when questioned about them at oral argument; and various Abramoff associates had been convicted and sentenced since the agency filed its declaration.  *See id.* at 1096–99.  In light of such doubts, the court

remanded the matter for the district court to determine "whether a related investigation is in fact ongoing . . . ." *Id.* at 1099.[2]

Here, unlike in *CREW*, the court has no reason to doubt that there is an ongoing investigation of individuals other than Plaintiff. The government repeatedly and explicitly states that an investigation is pending. To the court's knowledge, there have been no completed prosecutions since Hardy signed his second declaration on May 17, 2016, which could weaken the agency's reliance on Exemption 7(A). *See id.* at 1097 (stating that "Exemption 7(A) is temporal in nature" and noting that "reliance on Exemption 7(A) may become outdated when the proceeding at issue comes to a close"). Nor has there been such a protracted passage of time since the government first learned of WikiLeaks' publication of classified material for the court to doubt whether any investigation of others might still be ongoing. *See* Hardy Decl. ¶ 39 (stating that the FBI "opened a criminal/national security investigation in these allegations in 2010 and maintains [it] pursuant to applicable Attorney General Guidelines"). *CREW*, therefore, simply presents non-analogous facts and does not support Plaintiff's contention that Defendants have failed to establish the existence of an ongoing investigation into persons other than Plaintiff.

###    B.    Defendants' Categorical Withholding of Information

Next, Plaintiff argues that Defendants have failed to justify their "categorical" approach to withholding all responsive records. Pl.'s Cross-Mot. at 11–13, 15–18. Ordinarily, when an agency invokes a FOIA exemption to defend the withholding of information, it must "provide the requestor with a description of each document being withheld, and an explanation of the reason for the agency's nondisclosure." *Oglesby v. U.S. Dep't of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). Such a document-by-document approach is not required, however, when invoking

---

[2] The court also remanded the matter for the district court to determine "how the disclosure of documents relating to DeLay would interfere with" any ongoing investigation. *See id.* The court will discuss that requirement below.

Exemption 7(A).  Instead, "[c]ategorical withholding is often appropriate under Exemption 7(A)." *CREW*, 746 F.3d at 1098.  In this context, an agency may categorically withhold responsive documents as long as it:  (1) defines its categories functionally; (2) conducts a document-by-document review and assigns documents to the appropriate category; and (3) explains how the release of each category would interfere with enforcement proceedings.  *Id.* (citing *Bevis v. Dep't of State*, 801 F.2d 1386, 1389–90 (D.C. Cir. 1986)).  Additionally, the agency must define the categories in a way that allows the court to "trace a rational link between the nature of the document and the alleged likely interference" with the investigation.  *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986).

Plaintiff argues that the FBI has failed to meet those requirements, Pl.'s Cross-Mot. at 18–25, and asserts that the FBI's use of categories is "no more than an impermissible 'blanket' exemption," *id*. at 12–13.  The court has carefully reviewed the Hardy declarations and concludes Defendants have in fact satisfied the requirements for using the categorical approach.

The FBI divided its investigative materials into two categories: (1) evidentiary/investigative materials, and (2) administrative materials.  Hardy Decl. ¶¶ 45–47.  The FBI then reviewed and assigned document types into each category.[3]  *Id.* ¶ 45.  The FBI further divided the two main categories into smaller subcategories.  *Id.* ¶¶ 46–47.  The "evidentiary/investigative materials" category includes three subcategories:  (1) confidential source statements; (2) exchange of information between FBI and other law enforcement agencies; and (3) documentary evidence or information concerning documentary evidence.  *Id.* ¶ 46.  The

---

[3] The FBI grouped the records into document types, asserting that providing a document-by-document description "would undermine the very interests that the FBI seeks to protect under Exemption 7(A)."  Hardy Decl. ¶ 42; *see Prison Legal News v. Samuels*, 787 F.3d 1142, 1149 (D.C. Cir. 2015).  However, the FBI conducted a document-by-document review to determine whether there was any reasonably segregable non-exempt information that could be released.  2d Hardy Decl. ¶ 9.

"administrative materials" category also has three subcategories: (1) reporting communications; (2) miscellaneous administrative documents; and (3) administrative instructions.  *Id.* ¶ 47.

The declaration then describes how disclosing each subcategory of information would interfere with the pending investigation.  *Id.* ¶¶ 46–47; *see CREW*, 746 F.3d at 1098 (stating that "it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate *how* disclosure will do so" (internal quotation marks omitted)).  For example, the declaration explains that revealing confidential source statements could subject to retaliation or intimidation those individuals who are cooperating with law enforcement, which, in turn, could have a "chilling effect on the FBI's investigative efforts here and [on] any resulting prosecutions."  *Id.* ¶ 46.  Further, Hardy states that releasing information exchanged between the FBI and its law enforcement partners would "reveal the scope and focus of the investigation; identify and tip off individuals of interest to law enforcement; and provide suspects or targets the opportunity to destroy evidence and alter their behavior to avoid detection." *Id.* ¶ 46.  Such predictive judgments of harm are entitled to deference, *see CREW*, 746 F.3d at 1098, especially where, as here, the investigation concerns matters of national security, *see Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927–28 (D.C. Cir. 2003) ("Just as we have deferred to the executive when it invokes FOIA Exemptions 1 and 3, we owe the same deference under Exemption 7(A) in appropriate cases, such as this one.").  The court therefore is satisfied that Defendants have sufficiently shown how disclosure of the responsive material will interfere with its ongoing investigation.

Plaintiff's remaining argument is that Defendants have not shown how releasing only information concerning Plaintiff would interfere with its ongoing investigation of others.  Pl.'s Cross-Mot. at 15–16.  In *CREW*, the court stated that, "assuming some individuals do remain under

11

investigation, the relevant question is whether any of the responsive records, which are primarily about DeLay, would disclose anything relevant to the investigation of *those* individuals." 746 F.3d at 1099. The court then remanded the case for the district court to determine "how disclosure of documents relating to DeLay would interfere" with the ongoing investigation of others. *Id.* Under *CREW*, Plaintiff contends, Defendants must show how disclosure of documents relating to Plaintiff would interfere with the agencies' ongoing investigation of others. Pl.'s Cross-Mot. at 15 ("The Court cannot, on the basis of the FBI's Declaration, draw the conclusion that the withheld records are connected to, or would interfere with, the investigation of others, apart from Ms. Manning.").

Plaintiff's argument founders in light of the Hardy declarations, which satisfy the demands of *CREW*. Hardy states that the FBI conducted a document-by-document review and "did not locate any records that were exclusively about plaintiff." 2d Hardy Decl. ¶ 10. He further attests that, "to the extent that there was information about plaintiff in records that also contained other information, the FBI concluded that such information was not reasonably segregable" for two reasons. *Id.* "In some instances, disclosure of information about plaintiff in records that also contained other information could reasonably be expected to adversely affect the investigation in light of the context in which the information appears and the content of the information." *Id.* In other instances, "information about plaintiff was so comingled with other exempt information that it was inextricably intertwined and could not be reasonably segregated for release." *Id.*

Affording the proper deference to the FBI's predications of harm, *see CREW*, 746 F.3d at 1098, the court finds that Defendants have sufficiently shown that the release of information concerning only Plaintiff would still interfere with the ongoing investigation of others. The court thus concludes that Defendants properly used the categorical approach to justify their withholding of records under Exemption 7(A).

### C.       Segregability

Lastly, Plaintiff claims that Defendants failed to meet their statutory obligation to release any "reasonably segregable," non-exempt material.   Pl.'s Cross-Mot. at 18–25 (referencing 5 U.S.C. § 552(b)).   The court disagrees.

An agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material."   *Sussman*, 494 F.3d at 1117.   According to the Hardy declaration, the FBI conducted a document-by-document review of all records responsive to Plaintiff's FOIA request and concluded that there was no reasonably segregable, non-exempt information. 2d Hardy Decl. ¶¶ 9–10.   The FBI also considered "whether there was any public source information[4] that could be released to plaintiff"—such as information pertaining to Plaintiff's arrest, prosecution, or conviction—and "it concluded that in this instance, there was not."   *Id.* ¶ 10.

Plaintiff challenges Defendant's assertions on two grounds.[5]   First, Plaintiff argues that "the FBI conflates the 7(A) analysis with the segregability analysis."   Pl.'s Cross-Mot. at 22.   More specifically, she contends that the FBI cannot satisfy the duty to segregate simply by showing that a "*category* is exempt" from disclosure; instead, the FBI must review each document within each category to determine whether any portion of it is non-exempt.   *See id.* at 23–24 (citing *Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. U.S. Dep't of Treasury*, No. C 07-2590, 2008 WL 4482855 (N.D. Cal. Sept. 30, 2008)).   Defendant responds that an agency invoking Exemption 7(A) "is not required to provide a document-by-document segregability showing, as this would

---

[4] Public source material consists of information that is publicly available, such as newspaper clipping, press releases, and indictments.   *Fischer v. U.S. Dep't of Justice*, 596 F. Supp. 2d 34, 41 n.7 (D.D.C. 2009).

[5] Plaintiff makes a third argument, but it is without merit.   In short, she contends that the agency did not meet its duty of segregation because the FBI offered "*no* information regarding who conducted the review, when that person or persons did this review, and, critically, *how* that person or persons conducted the review."   Pl.'s Reply at 3.   Plaintiff does not cite any authority, and the court knows of none, that requires an agency to identify the person who conducted the review, or that otherwise demands the specificity Plaintiff asks of the agency.

'eviscerate the policy considerations that have led courts to conclude that the government need not provide such an index to show that its withholding of FOIA responsive documents is justified under Exemption 7(A).'"  Defs.' Reply at 10 (quoting *Robbins, Geller, Rudman & Dowd, LLP v. SEC*, No. 3:14-cv-2197, 2016 WL 950995, at *9 (M.D. Tenn. Mar. 12, 2016)).

The court need not determine the precise scope of an agency's segregation duty when it invokes the categorical approach under Exemption 7(A) because, on the facts presented, the court is satisfied Defendants carried out their duty here.  Again, according to Hardy's declaration, the FBI conducted a "document-by-document review of all records containing information responsive to both parts of plaintiff's request to determine whether there was any reasonably segregable non-exempt information that could be released to her" and "did not locate any such information." 2d Hardy Decl. ¶¶ 9–10.  That attestation, when combined with the presumption that agencies comply with their duty of segregation, is sufficient to demonstrate Defendants' compliance with FOIA's segregability requirement.  *See Dillon v. Dep't of Justice*, 102 F. Supp. 3d 272, 298–99 (D.D.C. 2015) (finding the FBI's segregability obligation satisfied when affidavit stated that the FBI could not segregate some materials because they were exempt in their entirety under 7(A) and the FBI "carefully reviewed" the remaining materials and determined that no additional non-exempt information could be released); *DiBacco v. U.S. Dep't of the Army*, 983 F. Supp. 2d 44, 65–66 (D.D.C. 2013) (finding that agency met segregability requirement when it performed document-by-document review and Plaintiffs offered no evidence to rebut the assertion that it produced all reasonably segregable material), *aff'd in part, remanded in part sub nom. DiBacco v. U.S. Army*, 795 F.3d 178 (D.C. Cir. 2015).

Second, Plaintiff questions whether the FBI conducted a segregation review at all, given the short timeframe in which it claims to have both reviewed the responsive documents and denied

their disclosure.  Pl.'s Cross-Mot. at 21.  To support her claim, Plaintiff points out that the FBI conducted its search for responsive records on the very same day—April 8, 2014—that it notified her it would not be disclosing information pursuant to Exemption 7(A).  *See id.*  "Such a timeframe," Plaintiff argues, "does not allow for document-by-document or line-by-line review of records for segregable portions, as required by law."  *Id.*

Hardy's second declaration provides a reasoned explanation for the FBI's rapid search and response to Plaintiff's FOIA request—prior familiarity with the material Plaintiff requested. Hardy explains that the FBI was already familiar with the types of records that were responsive to Plaintiff's request because it had previously reviewed that information in response to another FOIA request.  2d Hardy Decl. ¶ 8 (citing *Elec. Privacy Info. Ctr. v. Dep't of Justice Criminal Div. (EPIC)*, 82 F. Supp.3d 307 (D.D.C. 2015)).[6]  "This prior knowledge and familiarity, along with continued discussions with Special Agents assigned to this investigation, informed the decision that no information could be segregated and released to plaintiff in response to her request."  *Id.* Thus, Hardy concedes that the FBI did not conduct a document-by-document segregability review before it notified Plaintiff that it would be withholding all responsive records, but makes clear that the FBI did conduct such a review "by the time of [his] first declaration."  *Id.* ¶ 9.

In the court's view, the better course would have been for the FBI to conduct its segregability review *before* notifying Plaintiff of its decision not to disclose any records.  The FBI's failure to do so, however, is not fatal to its defense.  Hardy's declaration is entitled to good faith, and Plaintiff has not come forward with a sufficient "quantum of evidence" to overcome the

---

[6] In *EPIC*, the plaintiff sought records related to the government's investigation into WikiLeaks, specifically records regarding individuals who had demonstrated support—financially, on social media, or otherwise—for the organization.  *Id.* at 312.

presumption that the agency complied with its duty to segregate non-exempt material. *Sussman*, 494 F.3d at 1117.  The court, therefore, is satisfied that the FBI conducted a segregability review.

### D.      In Camera Review

Plaintiff asks the court to conduct an in camera review of the withheld material.  Pl.'s Reply at 7.  The Court of Appeals has instructed district courts not to conduct in camera reviews unless unavoidable.  *Crooker*, 789 F.2d at 67.  An in camera review may be required when the agency affidavit is insufficiently detailed or there is evidence of bad faith on the part of the agency. *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996).  Neither of those conditions is present here.  Accordingly, the court declines to conduct an in camera review.

## V.      CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.  A separate Order accompanies this Memorandum Opinion.


Dated:  January 11, 2017                            Amit P. Mehta
                                                    United States District Judge